# UNITED STATES DISTRICT COURT

for the
Eastern District of Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple IPhone 6s, Model: A1688<br>IMEI: 355396083067796 | )<br>)<br>)<br>)<br>)<br>) |

Case No. 1:17sw 749

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A (incorporated by reference).

located in the _____Eastern_____ District of _____Virginia_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § § 841, 846 | Possession with the Intent to Distribute Controlled Substances and Conspiracy |

The application is based on these facts:
See attached affidavit of Mark J. Grado, FBI Special Agent.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Mark J. Grado, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

/s/
_____
Theresa Carroll Buchanan
United States Magistrate Judge

Date: _____11/02/2017_____

_____
*Judge's signature*

City and state: Alexandria, Virginia

Theresa Carroll Buchanan, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is listed below (hereinafter referred to as "the Devices").

The Devices are currently located in the FBI evidence locker, which is located at 9325 Discovery

Boulevard, Manassas, Virginia 22043, which is within the Eastern District of Virginia.  The

Devices include the following:

| Number | Description | Serial or Other Number | Reference in Affidavit |
|--------|-------------|------------------------|------------------------|
| 1 | Apple iPhone 6 Model: A1549 | IMEI: 359229068878901 | Device #1 |
| 2 | Apple iPhone 6s Model: A1688 | IMEI: 355396083067796 | Device #2 |

The applied-for warrant would authorize the forensic examination of the Devices for the

purpose of identifying electronically stored data particularly described in Attachment B.

## ATTACHMENT B

1.     All records on the Devices described in Attachment A that relate to violations of

Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute controlled

substances) and involve Jamar Cox, including:

     a.  any conversations, whether through text messages or other applications, where

        Cox discusses controlled substances or firearms;

     b.  lists of customers and related identifying information;

     c.  types, amounts, and prices of drugs trafficked as well as dates, places, and

        amounts of specific transactions;

     d.  any information related to sources of drugs (including names, addresses, phone

        numbers, or any other identifying information);

     e.  any information related to sources of or purchases of firearms;

     f.  any photographs or videos of controlled substances or firearms; and

     g.  all bank records, checks, credit card bills, account information, and other financial

        records.

2.     Evidence of user attribution showing who used or owned the Devices at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history.

17

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Apple IPhone 6s<br>Model: A1688<br>IMEI: 355396083067796<br><br>CURRENTLY LOCATED AT<br>FBI Evidence Locker<br>9325 Discovery Boulevard<br>Manassas, Virginia 20109 | **Under Seal**<br><br><br>1:17-sw-749 |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Mark J. Grado, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—

electronic devices—which are currently in law enforcement possession, and the extraction from

those devices of electronically stored information described in Attachment B.

2.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI")

since August 2014.  Since January 2015, I have been assigned to a squad that investigates

Criminal Enterprises and Violent Gangs out of the Washington Field Office, Northern Virginia

Resident Agency.

3.      Based on my training and experience, and the experience of other law

enforcement officers, in investigating narcotics and the distribution of narcotics while armed, I

know that it is common for individuals engaged in this activity to use telephonic

communications, both cellular (to include voice and text messages) and hard line, to further their criminal activities. I know that "smart" phones play an integral role in the daily lives of individuals engaging in narcotics trafficking and that these individuals use cellular telephones to exchange information with customers and/or source(s) of supply through text messaging, instant messaging, and telephone conversations. I also know that it is common for narcotics traffickers to use multiple "smart" phones to communicate with co-conspirators in order to compartmentalize their illegal activity and avoid detection by law enforcement. Further, I know it is common for narcotics traffickers to change their phones and phone numbers in order to avoid detection by law enforcement.

4.      The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from federal and state law enforcement officers, and information obtained from interviews and analysis of reports.

5.      This affidavit contains information necessary to support probable cause. The information contained in this affidavit is not intended to include each and every fact and matter observed by me or known to the government.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.      The property to be searched is listed below (hereinafter referred to as "the Devices"). The Devices are currently located in the FBI evidence locker, which is located at 9325 Discovery Boulevard, Manassas, Virginia, which is within the Eastern District of Virginia. The Devices include the following:

2

| Number | Description | Serial or Other Number | Reference in Affidavit |
|--------|-------------|------------------------|------------------------|
| 1 | Apple iPhone 6<br>Model: A1549 | IMEI: 359229068878901 | Device #1 |
| 2 | Apple iPhone 6s<br>Model: A1688 | IMEI: 355396083067796 | Device #2 |

7.     The applied-for warrant would authorize the forensic examination of the Devices

for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

A.     Background of Investigation

8.     In February 2017, a cooperating source ("CI-1") reported to the Prince William

County Police Department that Tarvell Vandiver was a narcotics distributor.  CI-1 is a member

of the Imperial Ganster Blood gang.  CI-1 will be referred to in the masculine gender, regardless

of CI-1's true gender.  CI-1 has been convicted of two felonies, including robbery and a

probation violation.  He was arrested in December 2016, in Prince George's County, Maryland,

for possessing a stolen firearm as a convicted felon and possession of controlled substances.  CI-

1 originally cooperated because he hoped to receive a lesser sentence.  Based on CI-1's

cooperation, Prince George's County dismissed his charges.  CI-1 continues to cooperate

because he is being compensated.  CI-1 also hopes to be relocated.

9.     In March 2017, the Bureau of Alcohol, Tobacco, Firearms and Explosives

("ATF") and FBI began jointly investigating Imperial Gangster Blood gang members to include

Vandiver and his associates involved in criminal activity in Northern Virginia.

10.     During the course of this investigation, law enforcement learned that Vandiver is

actively conspiring with Nasiru Carew, JAMAR COX, and others to distribute and possess with

intent to distribute controlled substances, in violation of Title 21 United States Code, Sections

3

841(a)(1) and 846. During the course of this investigation, agents have determined that Carew leads an organization responsible for sending multi-pound shipments of THC gummies and marijuana to Northern Virginia area. Moreover, several suspects have expressed their fear of Carew.

B.     April 21, 2017 Arrest of Nasiru Carew and Jamar Cox in Prince George's County

11.     On April 21, 2017, law enforcement officers of Prince George's County Police Department ("PGCPD"), Maryland, observed a Mercedes Benz traveling at a high rate of speed and that the driver failed to use a turn signal. Officers also observed the vehicle attempt to park next to a purple Land Rover.

12.     Officers next executed a traffic stop on the Mercedes Benz. During the traffic stop, officers observed an unidentified subject jump out of the passenger seat of the Mercedes Benz vehicle and flee on foot. Officers pursued the unidentified subject and arrested him. Officers identified COX as the driver of the vehicle and Carew as the passenger who fled.

13.     While securing the scene, officers noticed packages containing what they believed to be marijuana in plain view inside the Land Rover. During a search incident to arrest, the keys to the Land Rover were located in COX's pocket. During a subsequent search of the Land Rover, law enforcement seized approximately 1,616 grams (approximately 3.5 pounds) of marijuana packaged in heat-sealed vacuum bags, 33 packets of THC gummies with brand name "Gummy 420"(approximately 3, 710 grams), and approximately forty-eight grams (48 grams) of a substance that field tested positive for heroin. Law enforcement also seized a loaded Glock .40 caliber pistol in a gun case located underneath the drugs.

14.     Law enforcement officers additionally seized a large brown box addressed to a residence located in Woodbridge, Virginia (hereafter the "Woodbridge address"). Law

4

enforcement conducted a database search for the name listed on the receiving address, but found no reference to an individual with that name residing at the Woodbridge address.

C.    Search of Landover Residence

15.    Based on the items seized from the vehicle, law enforcement executed a search warrant at a residence located in Landover, Maryland. Officers located the master bedroom on the second floor of the residence and seized the Devices. Several documents were found in the residence linking COX and his girlfriend to the address, including: (1) a letter from the Maryland Department of Labor, Licensing, and Regulation addressed to COX, which was found in the master bedroom; (2) A W-9 Request for Taxpayer Identification Number and Certification, which was found in the master bedroom; and (3) a Direct TV invoice addressed to COX, which was found in the kitchen. Law enforcement also found in the master bedroom closet clothing belonging to a male and a female. Further, law enforcement located several documents from the U.S. Customs and Immigration Services addressed to Carew and clothing belonging to a male in a separate bedroom in the residence. Based on my experience and my knowledge of this case, I believe there is probable cause to believe that Carew was staying in the separate bedroom in the residence and that the master bedroom was the primary bedroom shared by COX and Carew's sister.

16.    During a search of COX's bedroom, law enforcement seized approximately $4,300 in U.S. currency, marijuana, and a bag containing approximately 60 grams of THC edibles. Additionally, law enforcement seized scales, cutting agents, a food storage heat-sealer, several heat-sealed bags, and two bank deposit receipts both in the amount of $7,000. Based on my training and experience, I know that these items are consistent with the distribution of controlled substances.

5

D.   Search of Carew's cellular phone

17.   Based on this information, the PGCPD applied for a search warrant of Carew's cellular phone. Maryland Circuit Court Judge C. Philip Nichols authorized a search warrant for Carew's phone on April 25, 2017. A copy of the search results were shared with the FBI and the ATF.

18.   During the search of Carew's phone, law enforcement located numerous drug related conversations with known and unknown co-conspirators. These communications include third-party bank account information and payment instructions. Carew's phone also contained communications about addresses where packages were to be sent and tracking numbers for parcel shipments. Carew's Snapchat user account information was also found on the phone as well as several screenshots of Snapchat messages of bank account information and mailing addresses.

19.   Based on this information, the FBI applied for a search warrant for Carew's known Snapchat account, nastyworld1, on August 16, 2017 (1:17sw510). A review of this Snapchat account found numerous drug related conversations with several known and unknown co-conspirators. The Snapchat messages included communications about bank account information, conversations about ordering drugs, and addresses to be used when mailing shipments from from California to Virginia and elsewhere. Based on my training, experience, and my knowledge of this case, I believe there is probable cause to believe that Carew is involved in a conspiracy to distribute controlled substances.

E.   Seized Communications between Jamar Cox and Nasiru Carew

20.   In the subsequent search of Carew's Snapchat account, law enforcement reviewed Carew's contact information. In Carew's contact information, the contact information for a

6

person named "Jamar" was saved under a Snapchat username "jamrock_876." COX is also known to use an Instagram social media account with username "jamshots_." The Instagram account includes numerous pictures and videos of COX. Moreover, in the biographical information for the Instagram account, the user lists the Snapchat account name "Jamrock_876." I believe there is probable cause to believe that COX is the account owner and user for Snapchat account "jamrock_876" and Instagram account "jamshots_."

21.     From May 2016 to June 2017, Carew had multiple drug-related chat messages with COX's Snapchat account.

22.     Based on a review of Carew's Snapchat return, I determined that six addresses were provided or received by COX. On February 21 and April 21, 2017, COX sent an address located on Lakehouse Road, Beltsville, Maryland, to Carew. A database search of United States Postal Service ("USPS") records identified three parcels delivered to this address between February and April 2017. A parcel weighing approximately 10.25 pounds was delivered to this address on February 24, 2017. Additionally, a parcel weighing approximately 6.5 pounds was delivered to this address on April 24, 2017. Each package originated from the San Diego, California area and in total weighed 27 pounds.

23.     In a chat sent from COX's Snapchat Account to Carew on May 9, 2016, COX stated "The address 15601 millbrook Lane ? Right bro." Another chat sent from COX to Carew on May 18, 2017, gave an address in "Glenarden M.D. meet me here its round da corner."

24.     Based on my training, experience, and knowledge of this investigation, I believe that COX was sending addresses to Carew in order provide an address to receive USPS parcels filled with controlled substances.

7

25.     In a chat conversation from Carew, dated December 20, 2016, Carew stated the following:

Carew:      Nah them shits done for

Carew:      And if so you gone pay about 500 or better

26.     On June 19, 2017, Carew sent the following chat message to COX's Snapchat account

Carew:      I know it's not that hard bro . You causing all this technicality.. I give you work. And then asked you do you have my money ready. ? And I get a message from my sister saying the money in her account . You holding me up now ! I needed the money days ago . And then I asked u days ago pull the money out .then asked u again today where's the money . For you to tell me a whole other story .. shit is very simple bro

27.     After reviewing Carew's Bank of America account records, I located an email transfer for $1,100 on June 26, 2017, from the bank account in Carew's sister's name to Carew's bank account.

28.     Based on my training and experience, I know that drug dealers "front drugs" or provide drugs on consignment. I believe there is probable cause to believe that Carew provided drugs to COX and that Carew is communicating with COX about the money that he (Carew) is owed. Because Snapchat is an application, most people use a "smart" phone when using their Snapchat account. I therefore submit there is probably cause to believe the Devices will contain evidence of COX's role in conspiring to distribute controlled substances.

F.      Seizure of the Devices

29.     As stated above, on April 21, 2017, the PGCPD seized the Devices during a court-authorized search of COX's residence in Landover, Maryland. In particular, the Devices were seized from the master bedroom. While agents cannot guarantee all phones are owned or

8

used by COX, the only way to determine this information is to access the Devices and search them. Agents will discontinue searching a phone if they determine that COX did not use the phone in question.

30. On October 11, 2017, the Devices were transferred from the PGCPD evidence section to the FBI evidence section. The Devices are currently in the lawful possession of the FBI. It came into the FBI's possession in the following way: the Devices were stored in the PGCPD Evidence Section until October 11, 2017, when the Devices were turned over to FBI. The Devices have remained in the FBI evidence locker until present date. I seek this warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

31. The Devices are currently in storage at 9325 Discovery Boulevard, Manassas, Virginia, which is located within the Eastern District of Virginia. In my training and experience, I know that the Devices have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI and PGCPD.

32. After a search warrant is obtained for the Devices, ATF or FBI will begin the search of the Devices within the Eastern District of Virginia. If ATF or FBI cannot complete the search then agents will send the Devices to a private company that specializes in data extraction from Apple iPhones and other electronics. This private company will either (a) unlock the Devices and then return the Devices to the ATF or FBI office located in the Eastern District of Virginia, where the actual analysis of the contents of the Devices will take place or (b) unlock the Devices and create a forensic image of the Devices, and then return the Devices to the ATF

9

or FBI office located in the Eastern District of Virginia, where the actual analysis of the contents
of the Devices will take place.

## TECHNICAL TERMS

33.     Based on my training and experience, I use the following technical terms to
convey the following meanings:

      a.  *Wireless telephone*:  A wireless telephone (or mobile telephone, or cellular
telephone) is a handheld wireless device used for voice and data communication
through radio signals.  These telephones send signals through networks of
transmitter/receivers, enabling communication with other wireless telephones or
traditional "land line" telephones.  A wireless telephone usually contains a "call
log," which records the telephone number, date, and time of calls made to and
from the phone.  In addition to enabling voice communications, wireless
telephones offer a broad range of capabilities.  These capabilities include:  storing
names and phone numbers in electronic "address books;" sending, receiving, and
storing text messages and e-mail; taking, sending, receiving, and storing still
photographs and moving video; storing and playing back audio files; storing
dates, appointments, and other information on personal calendars; and accessing
and downloading information from the Internet.  Wireless telephones may also
include global positioning system ("GPS") technology for determining the
location of the device.

      b.  *Digital camera*:  A digital camera is a camera that records pictures as digital
picture files, rather than by using photographic film.  Digital cameras use a
variety of fixed and removable storage media to store their recorded images.

10

Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. *Portable media player*: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. *GPS*: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

11

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. *PDA*: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

f. *Internet*: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

12

34.      Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://www.apple.com/iphone/, I know that the Device has capabilities that allow it to serve as the following: a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on smart phones can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

35.      In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36.      Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

37.      *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

      a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

13

a. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

38.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

14

many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

39.   *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

40.   I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Mark J. Grado
Special Agent
Federal Bureau of Investigations

Subscribed and sworn to before me on November 2, 2017:

Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge

15

**ATTACHMENT A**

The property to be searched is listed below (hereinafter referred to as "the Devices").

The Devices are currently located in the FBI evidence locker, which is located at 9325 Discovery

Boulevard, Manassas, Virginia 22043, which is within the Eastern District of Virginia. The

Devices include the following:

| Number | Description | Serial or Other Number | Reference in Affidavit |
|--------|-------------|------------------------|------------------------|
| 1 | Apple iPhone 6 Model: A1549 | IMEI: 359229068878901 | Device #1 |
| 2 | Apple iPhone 6s Model: A1688 | IMEI: 355396083067796 | Device #2 |

The applied-for warrant would authorize the forensic examination of the Devices for the

purpose of identifying electronically stored data particularly described in Attachment B.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute controlled substances) and involve Jamar Cox, including:

        a.  any conversations, whether through text messages or other applications, where Cox discusses controlled substances or firearms;

        b.  lists of customers and related identifying information;

        c.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

        d.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

        e.  any information related to sources of or purchases of firearms;

        f.  any photographs or videos of controlled substances or firearms; and

        g.  all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

17